**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


KENNETH DWIGHT POTEAT, II,     )
                                )
               Petitioner,   )
                                )
          v.               )      1:10CV973
                                )
ROY COOPER,                 )
                                )
               Respondent.   )


## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in connection with the consolidated prison sentence of 335 to 411 months he received in the Superior Court of Rowan County, after a jury found him guilty of four child sex crimes in case numbers 00 CRS 13545-13547 and 13549. (Docket Entry 2, ¶¶ 1-6; see also id. at 56.)[1] On direct appeal, the North Carolina Court of Appeals found no error and the North Carolina Supreme Court denied review. <u>State v. Poteat</u>, No. COA07–511, 187 N.C. App. 813 (table), 654 S.E.2d 84 (table), 2007 WL 4393229 (Dec. 18, 2007) (unpublished), <u>cert. denied</u>, 362 N.C. 686, 671 S.E.2d 331 (2008). Petitioner then filed (and amended) a Motion for Appropriate Relief ("MAR") in the trial court. (Docket Entry 2 at 23-38, 60-73; see also id., ¶ 11(a)(1)-(5).) Following denial of that MAR (as amended) (id. at 114-17; see also id., ¶ 11(a)(7) & (8)), the North Carolina Court of

---

[1] Petitioner attached a number of documents to his Petition, some recycled from a prior filing in this Court; pin citations to those materials (and other portions of the Petition that lack paragraph numbers) refer to the page numbers in the footer appended by the CM/ECF system upon their filing <u>in this case</u>.

Appeals refused certiorari and the North Carolina Supreme Court declined review (id. at 118-19; see also id., ¶¶ 11(d), 12(Ground One)(d) & (e), (Ground Two)(d) & (e), (Ground Three)(d) & (e), (Ground Four)(d) & (e), (Ground Five)(d) & (e), Ground Six(d) & (e), (Ground Seven)(d) & (e)). Subsequently, Petitioner commenced this action, whereupon Respondent moved for summary judgment (Docket Entry 5) and Petitioner responded (Docket Entry 10).[2] The parties consented to disposition of this case by a United States Magistrate Judge. (See Docket Entry 12.) For the reasons that follow, the Court will grant summary judgment to Respondent.

## I. Factual Background

On direct appeal, the North Carolina Court of Appeals summarized the facts of this case as follows:

> The evidence tends to show that on at least four occasions, beginning when she was eleven years old, B.B. was sexually abused by the twenty-two-year-old [Petitioner], her stepfather. The first sexual episode occurred in November 1995, when B.B. stayed home from elementary school one day, because she was sick. B.B. lay on her mother's bed near the bathroom and [Petitioner] started massaging her. She testified "he held my arms back, my legs and he started getting closer to my vagina." B.B. continued, "I was about to fall asleep and I felt his penis between my legs and it woke me." B.B. got out of bed and went into the bathroom because she did not feel well. [Petitioner] followed her and gave her medicine which made B.B. feel dizzy. [Petitioner] suggested that he should give B.B. a bath, which he advised would aid her sweating and sickness. After the bath, B.B. went back to bed and pretended that

---

[2] After the completion of briefing, Petitioner moved for appointment of counsel (Docket Entry 13-3), but failed therein to establish exceptional circumstances warranting such action, see Chapman v. Herron, No. 1:11CV194, 2012 WL 3151007, at *1-2 (M.D.N.C. Aug. 2, 2012) (unpublished) (discussing applicable standard and denying relief where, as here, the petitioner failed to show existence of colorable claim, as well as inability to present any such claim, and other cited grounds appeared common to many prisoner litigants).

she was asleep. She stated that [Petitioner] then "gave me oral sex and put my panties back on. Then, I pretended like I woke up."

B.B. further testified that in late 1996, when she was twelve years old, [Petitioner] "came home early from work and went to my bedroom and started grabbing me, touching me, and rubbing me and he stuck his finger in me." She also stated that "eventually [Petitioner] had sex with me." B.B.'s mother walked in while [Petitioner] was having sex with her. When B.B.'s mother entered the room, [Petitioner] immediately pulled his pants back on and walked out. B.B.'s mother asked her about the incident and B.B. gave her mother her diary, in which she had written about numerous incidents of [Petitioner's] sexual abuse. Her mother became tremendously upset, and held "a pistol at [Petitioner's] head and said, 'Let's talk.'"

In early 1997, approximately two months later, B.B. testified that [Petitioner] took her into her bedroom, "unclothed [her] and had sex with [her]." She further stated "I felt funny this time because I actually had my eyes open but I tried not to look."

[Petitioner] and B.B.'s mother separated in September 1997, but [he] still visited B.B.'s home "a few times after that." B.B. testified that in November 1997, [Petitioner] came back "into her room and he started touching [her] again." B.B. also testified that [Petitioner] "started rubbing up [her] legs and chest," and [he] "put his finger in [her], moved [her] down to the floor, and put his mouth on [her] again." Then, [he] "had sex with [her]."

At trial, another young lady testified that when she was five years old, [Petitioner] gave her and her brother a bath, after which [Petitioner] touched her vagina. [Petitioner] then unzipped his pants and showed her his penis. Because of this incident, [Petitioner] had previously been convicted of indecent liberties.

Poteat, 2007 WL 4393229, at *1-2 (internal brackets and ellipses omitted).

## II. Petitioner's Claims

The Petition identifies the following seven grounds for relief:

1) the indictment in case number "00 CRS 13549" was "[i]nvalid" and "[u]nconstitutional" because it alleged a "statutory sex offense with a child 13, 14, or 15 years old [but] . . . [i]n the pleading the state's theory was at the time of the offense (11-22-97) the victim was <u>under</u> the age of 13" (Docket Entry 2, ¶ 12(Ground One)(a) (emphasis in original));

2) the trial court "[c]onstructively [a]mended the [i]ndictment" in case number "00 CRS 13545" in an "[u]nconstitutional" manner when it "instructed the jury the [sic] could convict if at the time of the alleged offense the victim was 13 years old . . . directly contradict[ing] the theory stated in the pleading that at the time of the alleged offense the victim was under 13 years old" (<u>id.</u>, ¶ 12(Ground Two)(a));

3) the trial court "[u]nconstitutional[ly]" allowed the indictment in case number "00 CRS 13547" to go to the jury with an instruction "that to convict the alleged victim [must] ha[ve] <u>not</u> passed her 12th Birthday by 'Even a moment' . . . [despite the fact that the] victim testified at trial the alleged offense was after she was 12 'Nov - Dec' [sic] 1996 and [the] other alleged offense covered in [the] indictment was [in] early 1997" (<u>id.</u>, ¶ 12(Ground Three)(a) (emphasis in original));

4) the indictment in case number "00 CRS 13549" was "[i]nvalid" and "[u]nconstitutional" because it "allege[d] at the time of the offense [Petitioner] was more than four years but <u>less</u> than six years older than the victim . . .[,] a C class felony[, but he] . . . was convicted of being more than 6 years older than

-4-

[the] victim which is a B1 class felony" (id., ¶ 12(Ground Four)(a) (emphasis in original));

5) in case number "00 CRS 13549," the trial court "[c]onstructive[ly] [a]mend[ed]" the indictment in "[u]nconstitutional" fashion by "instruct[ing] the jury that in order to convict they must find that at the time of the alleged offence [sic] [Petitioner] was more than 6 years older than the victim . . . contradict[ing] the indictment which says [he] was more than 4 years but less than 6 years older than the victim" (id., ¶ 12(Ground Five)(a));

6) Petitioner received "[i]neffective [a]ssistance of trial and appellate counsel" because his "[t]rial attorney never objected to the invalid indictments, constructive amendments or to the Plain error where [Petitioner] was convicted after trial evidence proved he was not guilty according to the charge given to the jury ([in case number] 00CRS13547) . . . [and his] [a]ppellate [c]ounsel waited 5 years to file the appeal and . . . ignor[ed] [his] repeated request to argue the issues listed in this [P]etition" (id., ¶ 12(Ground Six)(a)); and

7) Petitioner's "[c]onviction [was] obtained by use of a coerced or illegally obtained confession . . . [in that] [d]uring the interview with [a] [d]etective [] [Petitioner] told her that [he] wished to have an attorney . . . [and she] then said [he] was being incooperative [sic] and [he] need[ed] to cooperate with her investigation[,] . . . offered a lesser charge in exchange for [him] giving an incriminating confession without an attorney[,]

. . . [and] continued to question [him] and take a statement . . . [which was used] against [him] at trial . . . [despite the fact that she] never read [his] rights and [he] said 'I wish to have an attorney'" (id., ¶ 12(Ground Seven)(a)).[3]

### III.  Habeas Standards

Federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court <u>only</u> on the ground that [the person] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a) (emphasis added). Further, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.  The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).

In addition, when a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d).  More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court

---

[3] Ground Seven appears in two parts, both labeled "Ground Seven" and titled "Conviction obtained by use of a coerced or illegally obtained confession."

of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. A state court decision qualifies as "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). Finally, this Court must presume state court findings of fact correct unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1).

The record confirms that, in his MAR (as amended), Petitioner raised the claims now asserted in Grounds Two through Six of the Petition (see Docket Entry 2 at 23-28, 30-32, 60-63, 69-70) and the trial court denied them on the merits (see id. at 114-17).[4] As a

_____

[4] In its original form, Petitioner's MAR addressed purported deficiencies in the indictments in case numbers 00 CRS 13545, 13547, and 13549, as well as alleged ineffective assistance by trial counsel in neglecting to raise challenges on those points and by appellate counsel in first delaying the direct appeal and then failing to present those defective indictment arguments. (See Docket Entry 2 at 23-32.) Aspects of those contentions (concerning the indictment in case number 00 CRS 13549, trial and appellate counsel's lack of pursuit of that issue, and delay by appellate counsel) materially match the matters presented in Ground Four and part of Ground Six of the Petition. (Compare id. at 23-28, 30-32, with
(continued...)

result, this Court may not grant habeas relief on Grounds Two through Six unless Petitioner satisfies his heavy burden under Section 2254(d). See Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011) ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d) . . . [imposes] a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt. The petitioner carries the burden of proof." (internal citations and quotation marks omitted)).

A careful review of the MAR (as amended), however, reveals that Petitioner did <u>not</u> raise therein the substance of Grounds One and Seven of the Petition. (See Docket Entry 2 at 23-38, 60-73.)[5]

---

[4](...continued)
<u>id.</u>, ¶ 12(Ground Four)(a) & (Ground Six)(a).) Upon amending his MAR, Petitioner refined his collateral claims so that they also focused on alleged constructive amendment (via the trial court's jury instructions) of the indictments in case numbers 00 CRS 13545 and 13549, claimed conflict between the trial evidence and the trial court's instructions regarding the indictment in case number 00 CRS 13547, and purported ineffective assistance of trial and appellate counsel in failing to litigate such subjects. (See id. at 60-63, 69-70.) Petitioner has submitted equivalent claims in Grounds Two, Three, Five, and the remainder of Ground Six of the Petition. (Compare id., with id., ¶ 12(Ground Two)(a), (Ground Three)(a), (Ground Five)(a), & (Ground Six)(a).) Moreover, the trial court expressly took note of the "[a]mendment to [Petitioner's MAR]" in "find[ing] no merit in the positions set forth by [Petitioner]" and ordering that his "[MAR] as amended is denied." (Id. at 117.) Accordingly, despite the fact that the trial court refrained from discussing in detail the amendment to the MAR, the trial court's denial of the claims now presented in Grounds Two through Six of the Petition occurred on the merits. See Johnson v. Williams, ___ U.S. ___, ___, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . [and that] presumption is a strong one that may be rebutted only in unusual circumstances . . . ."); Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1402 (2011) ("Section 2254(d) applies even where there has been a summary denial.").

[5] Petitioner did mark an "X" on a line beside the preprinted words "Conviction obtained by use of a coerced or illegally obtained confession. U.S. Const. Am. 5, 6, 14; N.C. Const. Art. I, Sec. 19, 23" (Docket Entry 2 at 36); however, despite the fact that an immediately preceding directive on the form stated "NOTE: Each allegation below of a constitutional violation must be
(continued...)

Nor did Petitioner pursue such matters on direct appeal. (See Docket Entry 6-4 at 2-40.)[6] Accordingly, as to Grounds One and Seven, Petitioner did not exhaust his state court remedies. See Howard v. Lassiter, No. 1:12CV453, 2013 WL 5278270, at *2 n.3 (M.D.N.C. Sept. 18, 2013) (unpublished) ("Petitioner has failed to exhaust his state court remedies . . . as he did not raise [this claim] on direct appeal or via MAR in the state courts." (citing cases)), recommendation adopted, 2013 WL 5461847 (M.D.N.C. Sept. 30, 2013) (unpublished), appeal dismissed, No. 13-7663, 2014 WL 265541 (4th Cir. Jan. 24, 2014) (unpublished). The Court thus presently may not grant habeas relief on those claims, 28 U.S.C. § 2254(b)(1),[7] but they "may be denied on the merits, notwithstanding the failure of [Petitioner] to exhaust the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(2) (emphasis added).

---

[5](...continued)
supported by specific facts alleged in part (2) above" (id. at 35), Petitioner included no such facts in his MAR or amendment (see id. at 23-38, 60-73). As to Ground Seven, Petitioner thus did not satisfy the "fair presentment" requirement. See, e.g., Jones v. Sussex I State Prison, 591 F.3d 707, 712-13 (4th Cir. 2010) (observing that, to exhaust a claim, a "prisoner must fairly present his claim in each appropriate state court," which requires "more than scatter[ing] some makeshift needles in the haystack of the state court record," but instead obligates the prisoner to make the "substance of the claim evident, such that both the operative facts and the controlling legal principles are presented to the state court" (internal brackets, citations, and quotation marks omitted)).

[6] The Docket includes three copies of Respondent's summary judgment brief, identified as Docket Entries 6, 7, and 8, with different portions of the state court record attached to each copy. Exhibit 1 to said brief (consisting of various trial court documents filed with the North Carolina Court of Appeals in conjunction with Petitioner's direct appeal) appears as Docket Entries 6-2 and 6-3. Exhibit 2 to said brief, which appears as Docket Entry 6-4, encompasses Petitioner's direct appeal brief filed with the North Carolina Court of Appeals. Exhibit 6 to said brief (containing the transcript of the pretrial and trial proceedings) appears as Docket Entries 7-1 through 7-3 and 8-1 through 8-3.

[7] Petitioner has not alleged and the record does not reflect "an absence of available State corrective process; or [that] circumstances exist that render such process ineffective to protect [his] rights," 28 U.S.C. § 2254(b)(1)(B).

-9-

## IV.  Discussion

As documented in Section II, Petitioner's first five grounds for relief all raise claims of error related to the face of two of the four indictments underlying his convictions and/or to certain actions taken by the trial court (including in instructing the jury) concerning those two plus one other of the four indictments. In regard to such matters, the Court first notes that "the Fifth Amendment requirement of indictment by grand jury does not apply to the states," Hartman v. Lee, 283 F.3d 190, 195 n.4 (4th Cir. 2002), and Petitioner therefore lacks any right cognizable in federal court to complain "that an indictment's charges may not be broadened through amendment except by the grand jury itself," Barbe v. McBride, 477 F. App'x 49, 51 (4th Cir. 2012) (internal quotation marks omitted).  He thus may proceed on any facial challenge to an indictment or claim of variance between an indictment and the charge(s) submitted to the jury, if at all, only to vindicate the right guaranteed by the Fourteenth Amendment's "Due Process [Clause] and the Sixth Amendment requir[ing] notice that is sufficient to allow a reasonable defendant to prepare for trial," Stroud v. Polk, 466 F.3d 291, 297 (4th Cir. 2006).[8]

That avenue, however, provides little room for collateral attack in this Court because "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal

---

[8] To the extent Petitioner complains of any purported violation of state law, this Court can afford him no relief.  See Estelle, 502 U.S. at 67 ("We have stated many times that federal habeas corpus does not lie for errors of state law." (internal quotation marks omitted)).

habeas corpus relief unless the deficiency makes the trial <u>so egregiously unfair</u> as to amount to a deprivation of the [petitioner's] right to due process." <u>Ashford v. Edwards</u>, 780 F.2d 405, 407 (4th Cir. 1985) (emphasis added); <u>see also</u> <u>Locklear v. North Carolina</u>, No. 1:07CV682, 2008 WL 4426167, at *3 (M.D.N.C. Sept. 24, 2008) (unpublished) ("[C]laims of this type, i.e., those alleging deficiencies in state court indictments, are not cognizable on federal habeas review, absent a showing that they rendered the entire state court proceeding fundamentally unfair."), <u>appeal dismissed</u>, 393 F. App'x 122 (4th Cir. 2010). Similarly, Petitioner would have to show that any "ailing [jury] instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (internal quotation marks omitted).

The ensuing discussion addresses the Petition's Grounds One, Four, and Five in one subsection (because they involve inter-related issues as to the indictment in case number 00 CRS 13549), followed by subsections dealing first with Grounds Two and Three (which pertain to the indictments in case numbers 00 CRS 13545 and 13547, respectively), next with Ground Six (which sets out ineffective assistance of counsel claims largely predicated on matters covered in the other grounds for relief), and finally with Ground Seven (which raises claims as to Petitioner's confession).

## A. Grounds One, Four, and Five – Case Number 00 CRS 13549

Grounds One, Four, and Five of the Petition concern the indictment in case number 00 CRS 13549, which accused Petitioner of

"[s]tatutory [r]ape of [a] 13, 14, 15 year old" on "11/22/97" (Docket Entry 6-2 at 17). (See Docket Entry 2, ¶ 12(Ground One)(a), (Ground Four)(a), & (Ground Five)(a).) Said indictment further described the alleged offense as a Class "B1" felony under N.C. Gen. Stat. § "14-27.7(A)" and stated that Petitioner "unlawfully, willfully and feloniously did engage in vaginal intercourse with . . . a person of the age of 13 years." (Docket Entry 6-2 at 17 (emphasis added).) It then added: "At the time of the offense, [Petitioner] was more than four years but less than six years older than the victim . . . ." (Id.) The Petition presents three claims related to that indictment: 1) the indictment described the victim as under 13, but charged a crime involving a 13, 14 or 15 year old victim (Docket Entry 2, ¶ 12(Ground One)(a)); 2) the indictment alleged that Petitioner's age exceeded the victim's age by four to six years, but resulted in a conviction for an offense with an age difference of six or more years (id., ¶ 12(Ground Four)(a)); and 3) the trial court instructed the jury based on a defendant-victim age disparity greater than six years, despite the indictment's reference to a four to six year gap. (Id., ¶ 12(Ground Five)(a).)

Regarding the first of those matters, the indictment in 00 CRS 134549 does not identify the victim as under 13, but instead plainly refers to her as "a person of the age of 13 years" on the offense date of November 22, 1997. (Docket Entry 6-2 at 17 (emphasis added).) Further, the victim testified at trial that said date fell the day after she turned 13 and that Petitioner had

-12-

vaginal intercourse with her that day. (Docket Entry 7-3 at 68-70 (transcript pages 194-96).) Ground One thus lacks merit.

In Ground Four, Petitioner complains that the indictment in case 00 CRS 13549 "alleges at the time of the offense [he] was more than four years but less than six years older than the victim[,] . . . a C class felony[, but he] . . . was convicted of being more than 6 years older than [the] victim which is a B1 class felony." (Docket Entry 2, ¶ 12(Ground Four)(a) (emphasis in original).) Similarly, via Ground Five, Petitioner objects that, in case number 00 CRS 13549, a "[c]onstructive [a]mendment" occurred when the trial court "instructed the jury that in order to convict they must find that at the time of the alleged offence [sic] [Petitioner] was more than 6 years older than the victim . . . contradict[ing] the indictment which says [he] was more than 4 years but less than 6 years older than the victim." (Id., ¶ 12(Ground Five)(a).) Those contentions do not warrant federal habeas relief.

The indictment in 00 CRS 13549 charged Petitioner with the "[s]tatutory [r]ape of [a] 13, 14, 15 year old" on "11/22/97," in violation of N.C. Gen. Stat. § "14-27.7(A)," and further identified said offense as a Class "B1" felony. (Docket Entry 6-2 at 17.). That "B1" reference corresponds to Subsection (a) of the cited statute, which addresses statutory rape of victims aged 13 to 15 by defendants "at least six years older." N.C. Gen. Stat. § 14-27.7A(a) (describing offense as "a Class B1 felony"). However, as previously noted, the indictment in case 00 CRS 13549 also contained language stating that, "[a]t the time of the offense,

-13-

[Petitioner] was more than four years but less than six years older than the victim" (Docket Entry 6-2 at 17), phraseology consistent with Subsection (b) of the subject statute (which establishes a Class C felony), see N.C. Gen. Stat. § 14-27.7A(b).

Before jury selection, the trial court heard "the State's motion to amend indictments." (Docket Entry 7-1 at 8 (transcript page 5); see also id. (setting out report by State's attorney that she "provided notice to [Petitioner] through a letter dated sometime ago that [the State] was asking to amend certain of [his] indictments").) At the hearing, the State first "ask[ed] in 00 CRS 13545, which alleges a statutory sex offense with a child thirteen, fourteen or fifteen, to amend the language of the indictment . . . [to] strike . . . 'Under the age of thirteen years' and insert 'A person of the age of thirteen years. And the defendant was at least six years older than the child', which would be required proof in that particular case." (Id. at 9 (transcript page 6) (emphasis added).) The State argued that such an amendment "d[id] not alter the nature of the offense . . . . [I]t's still indicted correctly as, 'Statutory sex offense with a child thirteen, fourteen, or fifteen.'" (Id. at 9-10 (transcript pages 6-7).)

At that point, the trial court invited comment from Petitioner's counsel (id. at 10 (transcript page 7)), who stated that, as to the indictments in "[00 CRS] 13545 and 13549, [his] understanding [was that the victim] . . . became thirteen years old [by the offense date]" (id. at 11 (transcript page 8) (emphasis added)); he then sought to clarify if "the State [wa]s asking to

-14-

amend those indictments instead of charging something less than
thirteen years old, to charge the same offense as a thirteen year
old?" (id. (emphasis added)).  The State responded that "[t]he
offense is charged correctly.  The language was not entirely
correct because [the victim] had already reached the age of
thirteen."  (Id.)  Petitioner's counsel thereafter inquired "But
does it change the class?" and the State answered: "No. . . . It
is a class B1 because he was at least six years older than her.
. . . [A]ll I'm asking is to amend to [sic] indictment to make the
language agree with the statutory requirement language which should
have been done in the beginning.  It was just an oversight." (Id.
at 12 (transcript page nine) (emphasis added).)

When Petitioner's counsel further stated "you're asking to
amend two of them," the State replied "Yes," but explained that the
indictment in 00 CRS 13549 did not require the striking of any
language because it correctly listed the victim's age.  (Id.
(emphasis added).)  Harkening back to the above-quoted, prior
discussion which reflected that the State's proffered amendment did
not address only the victim's age, but also the defendant/victim
age disparity, Petitioner's counsel asked if the State had proposed
"adding language to this [case number 00 CRS 13545] and that [case
number 00 CRS 13549]?"  (Id. at 13 (transcript page 10).)  This
colloquy immediately followed:

[State's attorney]:      Right.

[Petitioner's attorney]: That he was--

| | |
|---|---|
| [State's attorney]: | <u>At least six years older than the child. That's what I'm asking to do, yeah.</u> |
| [Petitioner's attorney]: | I understand. |
| [Trial court]: | Do you have any position? |
| [Petitioner's attorney]: | Well, Your Honor, I've been involved in this case since probably March [approximately five months before the hearing date] and I've--I've read the discovery material. I would make a technical objection for the record. |
| [Trial court]: | All right. Now, there's the one that's--[00 CRS 135]48 is the one that you have not talked about? |
| [State's attorney]: | Right. That--that was a little more complicated, Your Honor-- |
| [Trial court]: | Well, <u>as to the others</u>, I'm going to allow the other request to get it--so it will be straight. |

(<u>Id.</u> (emphasis added).)

Read in context, the pretrial hearing record thus reflects that, without substantive objection from Petitioner, the trial court amended the indictments in case numbers 00 CRS <u>13545</u> <u>and</u> <u>13549</u> (both of which on their face already charged Petitioner with committing a Class B1 felony under N.C. Gen. Stat. § 14-27.7A on November 22, 1997), to the extent necessary for each of them to list the victim's age as 13 <u>and</u> Petitioner's age as six or more years greater. That alteration merely insured that all aspects of said indictments matched the language of the originally referenced Class B1 felony portion of the statutory rape/sex offense statute,

as well as the indisputable historical facts regarding the ages of Petitioner and the victim. Consistent with that understanding, at the conclusion of the evidence, the trial court instructed the jury that, as to case number 00 CRS 13549, "the State must prove . . . that at the time of the act the victim was thirteen years old . . . [and that Petitioner] was at least six years older than the victim." (Docket Entry 8-3 at 88 (transcript page 511); see also id. at 85 (transcript page 508) (giving same instruction as to case number 00 CRS 13545).) Despite an invitation from the trial court to lodge any objection he had to that instruction before the jury began deliberating, Petitioner offered none. (See id. at 92 (transcript page 515).)[9]

---

[9] The record supports an inference that Petitioner did not object to the trial court instructing the jury in case numbers 00 CRS 13545 and 13549 on the elements of the Class B1 felony under N.C. Gen. Stat. § 14-27.7A(a), because he reasonably would have understood all along both that he faced those charges and that a gap of six or more years (in fact, 11 years) existed between his age and the victim's age. As to the latter matter, Petitioner's trial testimony confirms he knew his own age (Docket Entry 8-2 at 84 (transcript page 417)) and the victim's age (id. at 42 (transcript page 375)). Regarding Petitioner's knowledge of the charge, North Carolina law permits the State to proceed by "short-form indictment for sexual offenses committed against persons 13, 14, or 15 years old," State v. Daniels, 164 N.C. App. 558, 565, 596 S.E.2d 256, 260 (2004), and, in such an indictment, "'it is sufficient in describing a sex offense to allege that the accused person unlawfully, willfully, and feloniously did engage in a sex offense with the victim,'" id. (quoting N.C. Gen. Stat. § 15-144.2(a)). Information within the standard boxes of the instant short-form indictments met that standard, in that Petitioner therein received explicit notice that he faced charges of the Class B1 felony version of statutory sex offense/rape involving a victim aged 13 to 15, as well as notice of the alleged offense date (see Docket Entry 6-2 at 14, 17). As a result, under North Carolina law, other information in said indictments (including as to age disparity) was "not necessary in charging the offense [and any such information] may be treated as exceeding what is requisite and should be disregarded." State v. Lewis, 58 N.C. App. 348, 354, 293 S.E.2d 638, 642 (1982); accord State v. Moore, 284 N.C. 485, 493, 202 S.E.2d 169, 174 (1974) ("Any allegations in a bill of indictment over and above that which is held sufficient may be treated as surplusage."). Further, if Petitioner actually had not construed the language in the indictment in case number 00 CRS 13549 about an age difference of four to six years as mere errant surplusage that he should disregard and instead had suffered genuine confusion about the conflict between that reference and the indictment's citation to the Class B1 felony
(continued...)

Petitioner's attempt to turn these matters into a federal constitutional violation requiring relief from this Court fails for six reasons. First, he "ignores a critical fact: the [challenged] indictment did cite the [Class B1 felony provision of the relevant] statute and thus notif[ied] [him] – at least summarily – that he needed to defend against [that] charge . . . ." Stroud, 466 F.3d at 297. "Thus, from the time of his original indictment, [he] knew or should have known that he could be convicted for engaging in [a Class B1 felony under that statute]. That was sufficient notice for constitutional purposes." Barbe, 477 F. App'x at 52.

Second, to the extent the trial court (at the pretrial motion hearing and/or via the jury instructions) amended the indictment in case number 00 CRS 13549 so that all its language matched the original citation therein to the Class B1 felony under N.C. Gen. Stat. § 14-27.7A, no federal violation occurred because Petitioner lacked a federal right to have a grand jury make any such amendment. See Hartman, 283 F.3d at 195 n.4; see also Barbe, 477

[9](...continued)
provision of the statutory rape statute, he could have sought clarification by motion. See State v. O'Keefe, 263 N.C. 53, 55, 138 S.E.2d 767, 768 (1964) ("Where the defendant feels that he may be taken by surprise or that the indictment fails to impart information sufficiently specific as to the nature of the charge, he may before trial move the court to order a bill of particulars to be filed."). Not only did Petitioner opt against filing any such motion, he also refrained from claiming any surprise at the pretrial motion hearing. (See Docket Entry 7-1 at 8-13 (transcript pages 5-10).) Thereafter, at trial, "[t]he evidence corresponded with the allegations of the indictment which were essential and material to charge the offense . . . [and, with his jury instructions, the trial] judge in turn did an adequate job of clarifying the issues, and of eliminating extraneous matters, as was his duty." Lewis, 58 N.C. App. at 354, 293 S.E.2d at 642. In sum, from the inception of this case and certainly well before its resolution by the jury, a reasonable defendant (aided, as here, by counsel familiar with North Carolina law) would have understood the essential nature of the charges in case numbers 00 CRS 13545 and 13549.

F. App'x at 52 ("[N]or does [the Due Process Clause] prevent a state court from amending that portion of the indictment [which specifies the form of unlawful sexual conduct] when necessary."). Third, "the alteration of [the] indictment was one of form, not substance. The trial court simply amended the indictment in order to reflect the evidence the State intended all along to present at trial." Barbe, 477 F. App'x at 53.

Fourth, as documented above, Petitioner received confirmation, both during the pretrial motion hearing and in the instructions, that (consistent with the explicit terms of the subject indictment and the uncontested relative ages of Petitioner and the victim) the jury would consider the Class B1 felony of statutory rape of a 13-year-old by a defendant at least six years older; moreover, when twice given a chance to voice any claim of unfair surprise (first at the pretrial motion hearing and then before jury deliberations began), he demurred. Such circumstances support a finding that Petitioner suffered no deprivation of his federal constitutional right(s) to notice. See Magazine v. White, Civil Action No. 8:05-2067-TLW, 2006 WL 2780966, at *7 (D.S.C. Sept. 25, 2006) (unpublished) ("[C]onstitutional requirements are satisfied if the petitioner had actual notice of the charges at some point prior to resolution of the case."), appeal dismissed, 218 F. App'x 219 (4th Cir. 2007); see also Hartman, 283 F.3d at 195 & n.5 (observing that Supreme Court authority does not "say that the only constitutionally sufficient means of providing the notice required by the Sixth and Fourteenth Amendments is through the charging

document" and citing "several cases in which deficient indictments were held not to violate the Sixth and Fourteenth Amendments when the defendant received actual notice of the charges against him").

Fifth, Petitioner has shown neither that any initial defect in the indictment at issue regarding the difference between his and the victim's ages resulted in a "trial so egregiously unfair as to amount to a deprivation of [his] right to due process," Ashford, 780 F.2d at 407, nor that the trial court's amendment of said indictment and corresponding jury instruction as to the age disparity "so infected the entire trial that the resulting conviction violates due process," Estelle, 502 U.S. at 72 (internal quotation marks omitted)). (See Docket Entry 2, ¶ 12(Ground Four)(a) & (Ground Five)(a); Docket Entry 10 at 2-7.) Moreover, Petitioner could not plausibly make any such showing, given the nature of the evidence at trial. In that regard, the record reflects that the instant criminal case against Petitioner ensued because, in 2000, the victim (then 15) revealed, first to a juvenile court counselor (Docket Entry 7-3 at 24 (transcript page 150)) and then to a sheriff's office detective (Docket Entry 8-1 at 61-62 (transcript pages 292-93)), that Petitioner (the victim's former step-father) had sexually molested her several years earlier. According to the detective's trial testimony, after receiving that report, she arrested and interviewed Petitioner, who made detailed oral admissions which the detective reduced to a written statement that Petitioner signed. (Id. at 74-84 (transcript pages 305-15); see also Docket Entry 8-2 at 38, 44, 53,

86-88 (transcript pages 371, 377, 386, 419-21) (setting forth Petitioner's trial testimony acknowledging that he made an oral statement to the detective and that he signed a document she prepared, but asserting that he merely repeated things the detective said about the victim's report and that he signed the document without knowing its contents).)

The victim gave extensive testimony at trial about her sexual abuse by Petitioner, including particularized accounts of: 1) the first instance in November 1995 (the month she turned 11, shortly after Petitioner (then 22) married her mother) (Docket Entry 7-3 at 40-53 (transcript pages 166-79));[10] 2) an occasion in November or December of 1996 (just past her twelfth birthday) (id. at 53-56 (transcript pages 179-82)), as well as an incident approximately two months later (in early 1997) (id. at 61-62 (transcript pages 187-88));[11] and 3) the final episode in November 1997 (the day after she turned 13) (id. at 67-70 (transcript pages 193-96)).[12]  In addition, another minor victim testified that Petitioner sexually molested her in 1994, ultimately resulting in a conviction against him after a trial.  (Docket Entry 8-1 at 44-53 (transcript pages 275-84).)  For his part, Petitioner sought (through cross-examination by his counsel and via his own testimony) to discredit

---

[10] The indictment in case number 00 CRS 13456 for first degree statutory sex offense stems from this event. (See Docket Entry 2 at 115.)

[11] The indictment in case number 00 CRS 13547 for first degree child rape encompasses these matters.  (See Docket Entry 2 at 116.)

[12] The indictments in case numbers 00 CRS 13545 and 13549 for statutory sex offense with and statutory rape of a 13 to 15 year-old, respectively, address this conduct.  (See Docket Entry 2 at 114, 117.)

the victim's account, as well as the detective's testimony that Petitioner confessed to sexually abusing the victim.  (See Docket Entry 7-3 at 83-105 (transcript pages 209-31); Docket Entry 8-1 at 1-15, 84-102 (transcript pages 232-46, 315-33); Docket Entry 8-2 at 1-11, 18-84 (transcript pages 334-46, 351-417); Docket Entry 8-3 at 41-45, 52-56, 62-66 (transcript pages 464-68, 475-79, and 485-89).)  Petitioner, however, freely admitted facts establishing that his age exceeded the victim's age by 11 years.  (See, e.g., Docket Entry 8-2 at 42, 84 (transcript pages 375, 417).)  After reviewing the trial record, the North Carolina Court of Appeals reasonably concluded:  "The evidence against [Petitioner] for the charged offenses was overwhelming."  Poteat, 2007 WL 4393229, at *4.

The foregoing circumstances foreclose a finding that Petitioner suffered any prejudice at trial related to the age disparity issue and/or that the trial resulted in an unjust conviction warranting corrective federal court action.  See Barbe, 477 F. App'x at 51, 53 (giving, as one of the "reasons" the petitioner (who complained about state court's amendment of indictment to reflect allegation of "intrusion" in place of "intercourse") "cannot make th[e] showing" required by Ashford, the fact that his "defense at trial was that [victim] fabricated her allegations, and that strategy would apply equally to charges of intercourse or intrusion"); Clark v. Keller, No. 1:11CV542, 2013 WL 4589879, at *7 (M.D.N.C. Aug. 28, 2013) (unpublished) ("This court finds it difficult to believe that [the] [p]etitioner would have substantially altered his strategy had he been presented with an

ideal indictment, nor has [the] [p]etitioner offered any credible explanation of an alternate strategy. . . . Under these circumstances, the variance between the indictment and the proof did not make his trial so egregiously unfair as to amount to a deprivation of due process." (citing and quoting, inter alia, Fawcett v. Bablitch, 962 F.2d 617, 618 (7th Cir. 1992), for proposition that "defective state charging document does not violate due process unless 'inadequate notice leads to a trial with an unacceptable risk of convicting the innocent'" (internal brackets omitted))), appeal dismissed, No. 13-7499, 2014 WL 487122 (4th Cir. Feb. 7, 2014) (unpublished).

Sixth (and, most significantly, given the applicability of Section 2254(d) to Grounds Four and Five, as established in Section III), Petitioner "cites no Supreme Court precedent that requires adoption of his position [that a federal constitutional violation occurred]," Stroud, 466 F.3d at 297. (See Docket Entry 2, ¶ 12(Ground Four)(a) & (Ground Five)(a); Docket Entry 10 at 2-7.) "The lack of a controlling Supreme Court precedent is fatal to [his instant] habeas claim[s] . . . ." Stroud, 466 F.3d at 297. More specifically, "[a]bsent factual error (which is not at issue here), only if a state court renders a decision that is 'contrary to' or 'involves an unreasonable application' of a Supreme Court holding can a petitioner obtain federal habeas relief. [This Court] cannot say the state court's rejection of [Petitioner's instant] claim[s] was 'contrary to,' or 'involved an unreasonable application' of, clearly established federal law, as determined by the Supreme

-23-

Court." Id. at 298 (internal brackets, citation, emphasis, and footnote omitted); see also Clark, 2013 WL 4589879, at *6 (denying habeas relief "[g]iven the level of deference to the state courts and the strict standard for defective indictments under the Sixth and Fourteenth Amendments"); Townsend v. Stancil, No. 5:12HC2086BO, 2013 WL 878415, at *11 (E.D.N.C. Mar. 8, 2013) (unpublished) ("The MAR court examined the substance of this claim and concluded that the indictments were 'not defective as a matter of law in not setting out each element of the offense.' The [MAR court's] adjudication of this claim is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States . . . ."), appeal dismissed, 534 F. App'x 203 (4th Cir. July 23, 2013).

In light of all those considerations, Grounds Four and Five of the Petition provide no basis for habeas relief.

## B. Grounds Two and Three – Case Numbers 00 CRS 13545 and 13547

Ground Two of the Petition complains that, in case number "00 CRS 13545," the trial court behaved "[u]nconstituional[ly]" when it "[c]onstructively [a]mend[ed] the [i]ndictment" by "instruct[ing] the jury the [sic] could convict if at the time of the alleged offense the victim was 13 years old . . . directly contradict[ing] the theory stated in the pleading that at the time of the alleged offense the victim was under 13 years old." (Docket Entry 2, ¶ 12(Ground Two)(a).) The subject indictment charged Petitioner with "Statutory Sex Offense With a Child 13, 14 or 15 Years Old," on "11/22/97," a Class "B1" felony under N.C. Gen. Stat. § "14-

27.7(A).'"  (Docket Entry 6 at 14 (emphasis added).)  It also
inconsistently stated (in narrative text beneath the "short-form"
boxes containing the above-quoted information) that Petitioner
"unlawfully, willfully and feloniously did engage in a sexual act
with [the victim,] a person under the age of 13 years."  (Id.
(emphasis added).)  As detailed in the preceding subsection,
however, at the pretrial motion hearing, the State asked to amend
said indictment to strike the mistaken reference to "under the age
of 13," which request the trial court allowed without substantive
objection by Petitioner.  (See Docket Entry 7-1 at 8-13 (transcript
pages 5-10).)  The trial court thereafter instructed the jury in
accord with that amendment, with Petitioner expressly declining to
object before deliberations began.  (See Docket Entry 8-3 at 85, 92
(transcript pages 508, 515).)  Given that course of events, the
same six reasons (discussed at length in Subsection A) that
disqualify Grounds Four and Five of the Petition as bases for
habeas relief apply equally to Ground Two of the Petition[13] and the
Court therefore denies Ground Two as well.

    According to Ground Three of the Petition, in case number "00
CRS 13547," the trial court "[u]nconstitutionally" permitted the

---

[13] Specifically, in case number 00 CRS 13545:  1) the original indictment
gave constitutionally-sufficient summary notice of the Class B1 felony charge
under N.C. Gen. Stat. § 14-27.7A, see Stroud, 466 F.3d at 297; 2) Petitioner
possessed no federal right to have a grand jury amend the indictment, see
Hartman, 283 F.3d at 195 n.4; 3) the trial court made only a technical correction
to the indictment, see Barbe, 477 F. App'x at 53; 4) Petitioner received
confirmation of the charge prior to its resolution by the jury, see Magazine,
2006 WL 2780966, at *7; 5) given the nature of the evidence, Petitioner's
conviction did not constitute an injustice, see Ashford, 780 F.2d at 407; and 6)
Petitioner cited no Supreme Court authority establishing a federal violation
(which requirement applies as shown in Section III), see Stroud, 466 F.3d at 297.

jury to return a guilty verdict notwithstanding the instruction it received "that to convict the alleged victim [must] ha[ve] not passed her 12th Birthday by 'Even a moment' . . . [and the fact that the] victim testified at trial the alleged offense was after she was 12 . . . ." (Docket Entry 2, ¶ 12(Ground Three)(a) (emphasis in original).) The indictment at issue charged Petitioner with "first degree rape of a child," a Class "B1" felony under N.C. Gen. Stat. "14-27.2(a)(1)," with an offense date "[b]etween November 1996 and June 1997," and included additional language (consistent with the terms of the cited statutory provision)[14] that Petitioner "unlawfully, willfully and feloniously did carnally know and abuse [the victim], a child under the age of 13 years." (Id. at 16 (emphasis added).) Further, the evidence at trial showed that Petitioner had sexual intercourse with the victim at least twice between November 1996 and June 1997, as well as that the victim did not turn 13 until November 1997. (See Docket Entry 7-3 at 53-56, 61-62 (transcript pages 179-82, 187-88).)

Moreover, in instructing the jury regarding the subject indictment, the trial court correctly stated that "the State must prove . . . that at the time of the acts alleged the victim was a child at the age of twelve or less." (Docket Entry 8-3 at 87 (transcript page 510) (emphasis added).) In other words, the trial court instructed the jury, consistently with the language of the

---

[14] "A person is guilty of rape in the first degree if the person engages in vaginal intercourse . . . with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]" N.C. Gen. Stat. § 14-27.2(a)(1) (emphasis added).

indictment in case number 00 CRS 13547 and the criminal provision charged therein, N.C. Gen. Stat. § 14-27.2(a)(1), that, at the time of the offense, the victim must have been "under the age of 13," i.e., "the age of twelve or less." The trial court then added: "A child would be twelve years of age if she had reached her twelfth birthday. If she passed her twelfth birthday by even a moment she would be more than twelve years of age." (Id.) Those two sentences appear technically correct, but largely irrelevant to the victim-age element in the pertinent statute and indictment, which requires only that the victim not have reached age 13.[15]

Petitioner has given no explanation as to how he suffered any violation of a federal constitutional right due to the trial court's inclusion of the foregoing, somewhat awkward non-sequitur, which reasonably could have caused confusion only in a manner that prejudiced the State (e.g., by leading the jury to misperceive the applicable victim-age limit as 12, rather than 13). (See Docket Entry 2, ¶ 12(Ground Three)(a); Docket Entry 10 at 7-8.) Additionally, as discussed above, the record confirms that the State presented evidence sufficient to sustain the statutory violation accurately set forth in the indictment in case number 00 CRS 13547. Under these circumstances, Petitioner has failed to

_____

[15] In other words, although people typically refer to age only in year increments (e.g., one would describe a child as age 12 for an entire year from the date of her twelfth birthday up to the date of her thirteenth birthday), a day (or, in the trial court's words, a "moment") after her twelfth birthday, that child technically qualifies as more than 12 years old (i.e., 12-and-a-day or, more commonly, after six months, 12-and-a-half). However, that child nonetheless remains "under the age of 13" until her thirteenth birthday. Accordingly, in this context, a more helpful instruction might have informed the jury that a child becomes 13 when she reaches her thirteenth birthday and that the moment her thirteenth birthday arrives she no longer qualifies as under 13.

carry his burden of establishing that the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," Estelle, 502 U.S. at 72 (internal quotation marks omitted).  Finally, Petitioner has not demonstrated that the trial court's denial on the merits of this same claim in the amended MAR (as documented in Section III) "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d).  In sum, Ground Three falls short.

### C.  Ground Six – Ineffective Assistance of Counsel

Ground Six of the Petition asserts that Petitioner's trial and appellate lawyers provided constitutionally inadequate assistance. (Docket Entry 2, ¶ 12(Ground Six)(a).)  To sustain such a claim, Petitioner must show their "performance fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), as well as "a reasonable probability that, but for [their] unprofessional errors, the result of the proceeding would have been different," id. at 694.  Regarding the first of those matters, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  Id. at 689.  As to the second, Petitioner must establish that any error caused harm "so serious as to deprive [him] of a fair trial, a trial whose result is reliable."  Id. at 687.  Conclusory claims do not merit even a hearing.  See Nickerson

v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999).

Moreover (as shown in Section III), where (as here), a state court denied the ineffective assistance of counsel claim on the merits, Section 2254(d) further limits federal collateral review. Accordingly, "[w]here the issue is whether a state court has unreasonably applied *Strickland* standards to a claim of ineffective assistance of counsel, as it is here, '"double deference" is required — deference to the state court judgment granting deference to trial counsel's performance.'" Lavandera-Hernandez v. Terrell, No. 1:12-cv-553, 2013 WL 1314721, at *4 (M.D.N.C. Mar. 28, 2013) (unpublished) (quoting Burr v. Lassiter, 513 F. App'x 327, 340 (4th Cir. 2013)), appeal dismissed, 539 F. App'x 159 (4th Cir. 2013). In other words, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 788 (2011). Petitioner cannot overcome those substantial hurdles.

As Section II documents, with but one exception,[16] the "errors" of counsel of which Petitioner complains in Ground Six mirror the claims asserted in Grounds One through Five (and, as to appellate counsel, Ground Seven) of the Petition. (See Docket Entry 2, ¶ 12(Ground Six)(a).) For the reasons stated in Subsections A and B

___

[16] That one additional item concerns appellate counsel's delay in pursuing Petitioner's direct appeal. (See Docket Entry 2, ¶ 12(Ground Six)(a).) Petitioner, however, has identified no possible prejudice that resulted from the delay. (See id.; Docket Entry 10 at 10-11.) That aspect of Ground Six thus provides no basis for habeas relief.

above (as well as, in regards to appellate counsel, Subsection D below), Petitioner's attorneys did not act in an unprofessional manner by declining to pursue such matters and Petitioner suffered no resulting prejudice. Simply put, for federal constitutional purposes, Petitioner received sufficient notice of the charges against him in case numbers 00 CRS 13545 and 13549, lacked any basis for opposing correction by the trial court of technical errors in said indictments, and incurred no harm from any errant instruction by the trial court in case number 00 CRS 13547, such that any challenge either by trial or appellate counsel targeted to such subjects would have failed for want of merit.[17] Similarly, appellate counsel acted in a professionally reasonable manner by declining to appeal the trial court's refusal to suppress Petitioner's confession, given that (as shown in Subsection D below) that ruling stemmed from credibility determinations adverse

---

[17] To the extent Petitioner contends his attorneys provided ineffective assistance by not pursuing state-law-based attacks as to these matters, those contentions also fall short because the trial court ruled any such state-law-based claims without merit in denying the MAR. (See Docket Entry 2 at 115-17 (holding that any errors in indictments did not qualify as fatal under state law and that any opposition to (or appeal of) any requested amendment to address such non-fatal errors would have failed as futile).) That determination forecloses relief in this Court based on any claim that counsel should have pursued such state-law arguments because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68; see also Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) ("[The petitioner's] argument that the state court unreasonably applied Strickland obviously depends upon our determining [his counsel's] performance was deficient, but first we would have to conclude the state court misinterpreted state law . . . . It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. . . . [A state court] has already answered the question of what would have happened had [the petitioner's counsel] objected [on state-law grounds] . . . — the objection would have been overruled. Therefore, [the petitioner's counsel] was not ineffective for failing to make that objection [and the petitioner] . . . cannot be prejudiced by his counsel's failure to make a losing objection." (internal citations and quotation marks omitted)).

to Petitioner (thus rendering that issue a poor appellate option).
See Jones v. Barnes, 463 U.S. 745, 751-52 (1983) (recognizing that
winnowing out weaker arguments constitutes effective appellate
advocacy); Jones v. Uchtman, 387 F. Supp. 2d 856, 867 (N.D. Ill.
2005) (rejecting claim that appellate counsel rendered deficient
service by opting against appeal of adverse suppression ruling that
turned on trial-level court's credibility findings).  Ground Six
therefore fails as a matter of law.

### D.  Ground Seven – Petitioner's Confession

Petitioner's final ground for relief asserts that the trial
court should not have admitted at trial any evidence of the
statement he gave to the detective because she failed to advise him
of his rights, ignored his request for an attorney, and falsely
promised he would face lesser charges if he made a statement.
(Docket Entry 2, ¶ 12(Ground Seven)(a).)  Petitioner litigated that
matter before the trial court in a pretrial motion hearing (during
which he and the detective testified), but lost.  (See Docket Entry
7-1 at 26-64 (transcript pages 23-61); Docket Entry 7-2 at 1-33,
38-52, 58-63 (transcript pages 62-94, 99-113, 119-24).)   In
rejecting Petitioner's suppression motion, the trial court made the
following pertinent findings:

1) the trial court "had the opportunity to see and observe
each witness and to determine what weight and credibility to give
each witness's testimony" (Docket Entry 7-2 at 59 (transcript page
120));

2) the detective "did an interview of [Petitioner] and prior to writing down what he told her, she testified over his objection, that she advised him of his Miranda Rights" (id. at 60 (transcript page 121));

3) Petitioner "disagrees and states that [the detective] did not, but the [trial] [c]ourt finds that she did" (id.);

4) "[t]he [trial] [c]ourt finds [Petitioner] understood his rights" (id. at 60-61 (transcript pages 121-22));

5) "there were no offers of reward or inducement except that the [detective] did tell [Petitioner] that she would tell the Magistrate that he'd been cooperative and try to make him a good bond by his cooperation" (id. at 61 (transcript page 122));

6) Petitioner "was advised of his rights to have an attorney but . . . he did not specifically ask to have an attorney present and did not desire to stop talking at any time during the interview" (id.);

7) "the [trial] [c]ourt finds that [Petitioner] understood his rights at that time" (id.);

8) the "statement made by [Petitioner] to [the detective] . . . was made freely, voluntary [sic], and understandingly" (id. at 62 (transcript page 123));

9) Petitioner "fully understood his Constitutional Right to remain silent and his Constitutional Right to Counsel and all other rights" (id.); and

10) Petitioner "voluntarily waived each of these rights and thereupon made the statement to the [detective]" (id.).

This Court must presume the trial court's findings of fact correct unless Petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has not pointed to anything in the record that would meet that standard. (See Docket Entry 2, ¶ 12(Ground Seven)(a); Docket Entry 10 at 9.)[18] In particular, this Court cannot blithely reevaluate the credibility of witnesses on habeas review. To the contrary, "'for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear.'" Sharpe v. Bell, 593 F.3d 372 (4th Cir. 2010) (quoting Cagle v. Branker, 520 F.3d 320, 324-25 (4th Cir. 2008)). No such error appears here and the state court's factual findings (particularly that Petitioner received notice of and waived his Miranda rights before making a statement, that the detective did not promise Petitioner he would receive lesser charges if he made a statement, and that Petitioner never asked for a lawyer) thus must stand. As a result, no basis exists for this Court to grant habeas relief in connection with the trial court's denial of Petitioner's suppression motion. See, e.g., Missouri v. Seibert, 542 U.S. 600, 608-09 (2004) ("[G]iving the [Miranda] warnings and getting a waiver has generally produced a

---

[18] Petitioner asserts, without any citation to the record, that "[t]he detective couldn't make up her mind if she had [] [P]etitioner sign the waiver and statement before or after she supposedly took [the] statement." (Docket Entry 10 at 9.) The record, however, reflects that, although she became confused by the questions of Petitioner's counsel at one point during cross-examination, the detective clearly testified that she first read Petitioner his rights, then secured his oral waiver of those rights, next took his oral statement which she reduced to writing, and finally obtained his signatures on the rights waiver and statement form (after he reviewed it). (See Docket Entry 7-1 at 63-64 (transcript pages 60-61); Docket Entry 7-2 at 1, 19-23, 31 (transcript pages 62, 80-84, 92).)

virtual ticket of admissibility[.]"). Under these circumstances, the Court concludes that Ground Seven of the Petition lacks merit.

## V.  Conclusion

The Court denies Grounds One and Seven of the Petition on the merits pursuant to Section 2254(b)(2). Grounds Two through Six of the Petition fail as a matter of law under Section 2254(d).

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment (Docket Entry 5) is **GRANTED,** that Petitioner's Motion for Appointment of Counsel (Docket Entry 13) is **DENIED,** that the Petition (Docket Entry 2) is **DENIED,** and that a Judgment shall be entered dismissing this action.

/s/ L. Patrick Auld
L. Patrick Auld
United States Magistrate Judge

March 19, 2014